1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  D.K., by and through his            No. 2:08-cv-00534-MCE-DAD
    conservator, G.M.; G.M.,
12  individually; M.W., by and
    through her guardians ad litem,
13  L.W. and B.W.; B.W. and
    L.W., individually,
14
            Plaintiffs,
15
        v.                            MEMORANDUM AND ORDER
16
    SOLANO COUNTY OFFICE OF
17  EDUCATION (SCOE), Dee Alacrón,
    Superintendent; THE SOLANO
18  COUNTY BOARD OF EDUCATION;
    BENICIA UNIFIED SCHOOL
19  DISTRICT (BUSD); THE BUSD
    BOARD OF EDUCATION: Jeanne
20  Steinmann, Andre Stewart,
    Rosie Switzer, Bonnie Weidel,
21  Dana Dean; PATRICK HOLLAND,
    Principal; JoANN SEVERSON,
22  Vice-Principal ; KARLA
    BUCKLEY; SANDRA PEREZ; SHANNON
23  INGERSOLL; RUTH GARCIA;
    et al.,
24
            Defendants.
25

26                      ----oo0oo----

27  ///

28  ///

                            1

1    Plaintiffs D.K., G.M., M.W., L.W., and B.W. seek injunctive
2   and monetary relief from Defendants Solano County Office of
3   Education ("SCOE") and Superintendent Dee Alarcón
4   ("Superintendent Alarcón"); Solano County Board of Education
5   ("SCBE") and its individual board members ("Solano Board
6   Members"); Benicia Unified School District ("BUSD");
7   Superintendent Janice Adams ("Superintendent Adams") and Director
8   of Special Services Clare Davies; BUSD Board of Education
9   ("BBOE") and its individual members ("Benicia Board Members");
10  Patrick Holland, Principal of Benicia High School ("Principal
11  Holland"); JoAnn Severson, Vice-Principal of Benicia High School
12  ("Vice-Principal Severson"); Karla Buckley, Teacher; Sandra
13  Perez, Class Room Aide; Shannon Ingersoll, Class Room Aide; and
14  Ruthie Garcia, Class Room Aide, for claims arising under
15  42 U.S.C. §§ 12101, et seq. ("ADA"), Section 504 of the
16  Rehabilitation Act ("Rehabilitation Act"), 42 U.S.C. § 1983,
17  California Civil Code §§ 51, et seq. ("Unruh Act"), and
18  California Government Code §§ 11135, et seq.  Non-statutory state
19  law claims of intentional infliction of emotional distress,
20  battery, assault, false imprisonment, and negligent supervision
21  are also alleged.
22    Presently before the Court is BUSD, BBOE, Benicia Board
23  Members, Superintendent Janice Adams, Director of Special
24  Services Clare Davies, Principal Patrick Holland, and Vice-
25  Principal JoAnn Severson's (collectively "BUSD Defendants")
26  Motion to Dismiss Plaintiffs' Third Amended Complaint pursuant to
27  ///
28  ///

2

Fed. R. Civ. Proc. 12(b)(6)[1] on grounds that Plaintiffs fail to state a claim upon which relief may be granted for Plaintiffs' First, Second, Third, Fourth, and Ninth Claims.  On June 15, 2009, Defendants SCOE, Superintendent Alarcón, SCBE, and Solano Board Members (collectively "SCOE Defendants") joined in parts IV (B) and (C)(2) of the Motion to Dismiss.  On August 17, 2009, Defendant Mary Ellen Haddock ("Defendant Haddock") also joined in parts IV (B) and (C)(2) of the Motion to Dismiss.  For the reasons set forth below, the Motions will be granted in part and denied in part.[2]

**BACKGROUND**

Plaintiff D.K. ("DK") is a nineteen-year old student who lives within the school district boundary of BUSD and SCOE.  He has multiple disabilities, which include epilepsy, cerebral palsy, and, physical and developmental disabilities along with cognitive impairment.  DK currently attends the SCOE special education program at BUSD's Benicia High School.  Plaintiff G.M. ("GM") is DK's parent and also an employee of SCOE.

///
///
///
///

---

[1] Unless otherwise stated, all further references to a Rule are to the Federal Rules of Civil Procedure.

[2] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

1    The second named Plaintiff, M.W. ("MW"), is a twenty-year
2    old student who lives within the school district boundary of BUSD
3    and SCOE.  She has multiple disabilities, which include cognitive
4    impairment and a psychosis allegedly resulting from Defendants'
5    abuse.  MW also attends the SCOE special education program at
6    BUSD's Benicia High School.  Plaintiffs L.W. ("LW") and B.W.
7    ("BW") are MW's parents and guardians ad litem.

8    DK and MW attended Benicia High School special education
9    classes from August 2004 to present.  During this period of time,
10   Plaintiffs allege that DK's teacher, Karla Buckley ("Buckley"),
11   and class room aide, Sandra Perez ("Perez"), physically abused DK
12   by covering his hands in glue as punishment for his disability
13   related behavior, then watched in amusement.  Plaintiffs further
14   allege that Buckley and Perez physically abused DK by forcing him
15   to walk on his injured foot.  Buckley and Perez allegedly made DK
16   walk on his foot despite knowledge of DK's recent surgery because
17   Buckley and Perez have a personal animus toward DK due to his
18   disability related behaviors.  Plaintiffs also claim that Buckley
19   and Perez restrained DK by tying him to his wheelchair, reclined
20   it, then left the wheelchair in an inverted position for an
21   extended period of time.  Plaintiffs further allege that Buckley
22   and Perez subjected DK to sub-human and humiliating conditions by
23   permitting him to sit in his own feces.  Plaintiffs claim that
24   DK's other class room aides, Shannon Ingersoll ("Ingersoll") and
25   Ruthie Garcia ("Garcia"), failed to intervene during the above
26   described incidents.

27   ///

28   ///

1   Plaintiffs allege that Buckley and Perez also abused MW.
2  Plaintiffs assert that MW's medications have a noted effect of
3  making her drowsy.  As punishment for sleeping, Buckley and Perez
4  allegedly forced MW to stand atop a chair for prolonged periods
5  of time in front of her classmates.  Plaintiffs claim that on at
6  least one occasion, MW fell from the chair and injured herself.
7  Plaintiffs also allege that Buckley and Perez repeatedly taunted
8  and ridiculed MW by offering her rewards, then revoking them
9  without reason.  Plaintiffs assert that MW developed a psychosis
10  because of these actions.

11   On or around March 6, 2007, GM received a phone call from
12  North Bay Regional Center ("Regional Center") which allegedly
13  informed her that DK had been abused by Buckley and Perez.
14  Plaintiffs assert that GM contacted SCOE to obtain more
15  information and was told that an investigation was being
16  conducted, that Buckley and Perez had been terminated, and that
17  DK was not hurt.

18   On March 7, 2007, Plaintiffs claim that GM contacted the
19  Regional Center and was told of numerous instances of abuse.  On
20  or around April 23, 2007, SCOE purportedly told GM that she could
21  no longer visit DK's classroom without receiving permission from
22  her county supervisor.  Plaintiffs assert that SCOE knew of the
23  alleged abuses and purposefully concealed the incidents by
24  refusing to inform the parents of children with disabilities.
25  ///
26  ///
27  ///
28  ///

1    Plaintiffs filed the present action on March 7, 2008.   They
2   attempt to bring this action on their own behalf and on behalf of
3   all persons similarly situated.   The class which Plaintiffs
4   represent is composed of all parents of children with
5   disabilities and their children with disabilities attending
6   Benicia High School who have been denied their right to full and
7   equal access to the facilities, programs, services and activities
8   because of past abusive conduct concerning the discipline of
9   children with disabilities.
10    On May 26, 2009, after two prior motions to dismiss,
11   Plaintiffs filed their Third Amended Complaint ("TAC").   BUSD
12   Defendants now move to dismiss the First, Second, Third, Fourth,
13   and Ninth Claims in Plaintiffs' TAC pursuant to Rule 12(b)(6).
14   SCOE Defendants have joined the motion to dismiss with regards to
15   the Third, Fourth, and Ninth Claims.   Defendant Haddock has
16   joined the motion to dismiss with regards to the Ninth Claim.

17

18                              **STANDARD**

19   **A.    Judicial Notice**

20

21    Generally, the scope of review on a Rule 12(b)(6) motion to
22   dismiss is limited to the contents of the complaint.   <u>Marder v.</u>
23   <u>Lopez</u>, 450 F.3d 445, 448 (9th Cir. 2006).   However, "[t]he Ninth
24   Circuit has held that, 'on a motion to dismiss a court may
25   properly look beyond the complaint to matters of public record
26   and doing so does not convert a Rule 12(b)(6) motion to one for
27   summary judgment.'"
28   ///

1  Davis v. Sutley, No. EDCV 0701415-CBM (RNB), 2008 WL 1817262, at

2  *2 (C.D. Cal. Apr. 17, 2008) (quoting Mack v. South Bay Beer

3  Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) ("a court

4  may take judicial notice of records and reports of administrative

5  bodies").  Furthermore, a court may consider evidence on which

6  the complaint "necessarily relies" if (1) the complaint refers to

7  the documents; (2) the document is central to the plaintiff's

8  claim; and (3) no party questions the authenticity of the copy

9  attached to the 12(b)(6) motion.  Marder, 450 F.3d at 448.  While

10  the court may take judicial notice of undisputed matters of

11  public record, the court may not take judicial notice as to the

12  validity or truth of disputed facts stated in those public

13  records.  Hunt v. Rodriquez, No. CIV S-06-0141 MCE GGH P., 2009

14  WL 173070, at *3 (E.D. Cal. Jan. 26, 2009).

15

16      **B.   Motion to Dismiss**

17

18      On a motion to dismiss for failure to state a claim under

19  Rule 12(b)(6), all allegations of material fact must be accepted

20  as true and construed in the light most favorable to the

21  nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,

22  337-38 (9th Cir. 1996).  Federal Rule of Civil Procedure 8(a)(2)

23  requires only "a short and plain statement of the claim showing

24  that the pleader is entitled to relief," in order to "give the

25  defendant fair notice of what the... claim is and the grounds

26  upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47, 78 S.

27  Ct. 99, 2 L. Ed. 2d 80 (1957).

28  ///

1  While a complaint attacked by a Rule 12(b)(6) motion to dismiss
2  does not need detailed factual allegations, a plaintiff's
3  obligation to provide the "grounds" of his or her "entitlement to
4  relief" requires more than labels and conclusions, and a
5  formulaic recitation of the elements of a cause of action will
6  not do. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65
7  (2007) (internal citations and quotations omitted).  Factual
8  allegations must be enough to raise a right to relief above the
9  speculative level. Id. at 1965 (citing 5 C. Wright & A. Miller,
10 Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)
11 ("The pleading must contain something more... than... a statement
12 of facts that merely creates a suspicion [of] a legally
13 cognizable right of action").

14      If the court grants a motion to dismiss a complaint, it must
15 then decide whether to grant leave to amend.  The court should
16 "freely give" leave to amend when there is no "undue delay, bad
17 faith[,] dilatory motive on the part of the movant...undue
18 prejudice to the opposing party by virtue of...the amendment,
19 [or] futility of the amendment...."  Fed. R. Civ. P. 15(a); Foman
20 v. Davis, 371 U.S. 178, 182 (1962).  Generally, leave to amend is
21 only denied when it is clear that the deficiencies of the
22 complaint cannot be cured by amendment.  DeSoto v. Yellow Freight
23 Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).
24 ///
25 ///
26 ///
27 ///
28 ///

**ANALYSIS**

**A.    Judicial Notice**

     BUSD Defendants request the Court to take judicial notice of the following documents pursuant to Fed. R. Evid. 201 (authorizing judicial notice of adjudicative facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"): (1) the June 23, 2007 Government Claim served by Plaintiff DK; (2) the September 7, 2007 Government Claim served by Plaintiff MW. (Defs.' RJN 2.)

     To the extent that BUSD Defendants are requesting that the Court take judicial notice of the contents of the Plaintiffs' government tort claims, BUSD Defendants' request is granted because (1) Plaintiffs' TAC explicitly refers to the documents in question as Paragraph 7 states: "Plaintiffs timely filed Tort Claims Notices under Government Code section 910 et seq. Defendants rejected the Tort Claims Notices for all Plaintiffs on October 22, 2007...."; (2) such documents are central to Plaintiffs' claims as the timely filing and subsequent rejection of government tort claims is a prerequisite to the filing of a civil complaint; and (3) Plaintiffs, nor any other party, question the authenticity of such documents.  However, to the extent that BUSD Defendants are requesting that the Court take judicial notice of the truth of the factual allegations contained therein, such request is denied.

///

///

///

1       **B.    Violations of the Americans with Disabilities Act,
              Section 504 of the Rehabilitation Act, the Unruh Civil
2             Rights Act, and Government Code § 11135.**

3

4           Plaintiffs' First and Second Claims allege that BUSD's acts

5    and omissions violated the Americans with Disabilities Act

6    ("ADA"), 42 U.S.C. §§ 12101, _et seq._[3] and Section 504 of the

7    Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. §§ 794, _et_

8    _seq._[4]  In order to state a claim under Title II of the ADA and

9    the Rehabilitation Act,[5] a plaintiff must allege: (1) he or she

10   is an individual with a disability under the Act; (2) he or she

11   is "otherwise qualified" to participate in or receive the benefit

12   of the entity's services, programs, or activities, i.e., he or

13   she meets the essential eligibility requirements of the entity,

14   with or without reasonable accommodation;

15   ///

16   ///

17

18          [3] Section 202 of the Americans with Disabilities Act
     provides that: "No qualified individual with a disability shall,
19   by reason of such disability, be excluded from participation in
     or be denied the benefits of the services, programs, or
20   activities of a public entity, or be subjected to discrimination
     by any such entity."  42 U.S.C. § 12132.
21
            [4] Section 504 of the Rehabilitation Act of 1973 provides
22   that: "No otherwise qualified individual in the United States...
     shall, solely by reason of his handicap, be excluded from
23   participation in, be denied the benefits of, or be subjected to
     discrimination under any program or activity receiving Federal
24   financial assistance...."  29 U.S.C. § 794(a).

25          [5] As stated by the Ninth Circuit: "There is no significant
     difference in analysis of the rights and obligations created by
26   the ADA and the Rehabilitation Act. _See_ 42 U.S.C. § 12133 ('The
     remedies, procedures, and rights set forth in [the Rehabilitation
27   Act] shall be the remedies, procedures, and rights [applicable to
     ADA claims].')..."  _Zukle v. Regents of University of California,_
28   166 F.3d 1041, 1045 (9th Cir. 1999)

(3) he or she was either excluded from participation in or denied the benefits of the entity's services, programs, or activities, or was otherwise discriminated against by the public entity solely by reason of his or her disability; and (4) the entity is a public entity (for the ADA claim) or receives federal financial assistance (for the Rehabilitation Act claim). <u>Zukle v. Regents of University of California</u>, 166 F.3d 1041, 1045 (9th Cir. 1999). The ADA must be construed broadly in order to effectively implement the ADA's fundamental purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. <u>Barden v. City of Sacramento</u>, 292 F.3d 1073 (9th Cir. 2002). Further, "[a] violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section." Cal Civ. Code § 51(f) ("Unruh Civil Rights Act").[6] Therefore, if Plaintiffs state a claim under the ADA, then they also state a State law cause of action under the Unruh Civil Rights Act.

///

///

///

///

///

---

[6] Cal. Civ. Code § 51 provides that: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

Similarly, Cal. Gov. Code § 11135 is identical to the Rehabilitation Act except the entity must receive State financial assistance rather than Federal financial assistance.[7]  Therefore, if Plaintiffs state a claim under the Rehabilitation Act, they have also stated a State law cause of action under Cal. Gov. Code § 11135, provided there is an additional allegation of State financial assistance.

### 1.   As to Student Plaintiffs DK and MW

With respect to the first element that must be demonstrated to state a claim under either Title II of the ADA or the Rehabilitation Act, the ADA defines "disability" as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment. 42 U.S.C. § 12102(2)(1994).  Major life activities include "caring for one's self, performing manual tasks, walking, seeing, hearing, *speaking*, breathing, *learning*, and working." 28 C.F.R. § 35.104(2) (emphasis added).

///

---

[7] Cal. Gov. Code § 11135 provides that: "No person in the State of California shall, on the basis of ethnic group identification, religion, age, sex, color, or physical or mental disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the State."

1    Student Plaintiffs allege that they are "person[s] with a
2  disability ... within the meaning of all applicable state and
3  federal disability nondiscrimination laws."  TAC, ¶¶ 15, 16.
4  More particularly, Student Plaintiff DK alleges that he "has
5  multiple disabilities including Epilepsy, Cerebral Palsy,
6  physical and developmental disabilities with cognitive
7  impairment." TAC, ¶ 15.  Student Plaintiff MW also alleges that
8  she "has multiple disabilities including a cognitive impairment."
9  TAC, ¶ 16.  Epilepsy, cerebral palsy and cognitive impairment are
10  considered physical or mental impairments under the ADA.
11  28 C.F.R. § 36.104. Student Plaintiffs further allege that "due
12  to the nature of their disabilities Plaintiffs D.K. and M.W. are
13  unable to answer questions regarding what happened to them or
14  describe events which occurred in the classroom."  TAC, ¶ 4.
15  Such an allegation indicates that Student Plaintiffs'
16  disabilities substantially limits some major life activities.
17  Therefore, Student Plaintiffs have adequately alleged that they
18  are individuals with disabilities under the ADA.

19    As to the second prerequisite for establishing disability
20  discrimination, in order to be "qualified," a person must "with
21  or without reasonable modifications to rules, policies or
22  practices ... meet[] the essential eligibility requirements for
23  the receipt of services or participation in programs or
24  activities provided by a public entity." 42 U.S.C. § 12131;
25  28 C.F.R. § 35.104.  Here, the TAC alleges that Student
26  Plaintiffs are eligible for BUSD's educational programs because
27  they "live[s] within the school district boundary of the Benicia
28  Unified School District ...."  TAC ¶¶ 15, 16.

Therefore, Student Plaintiffs have sufficiently alleged that they are otherwise qualified for BUSD's programs.

With respect to the third element, Defendants argue that the claim against BUSD must be dismissed because Plaintiffs DK and MW ("Student Plaintiffs") have not alleged that they were either excluded from participation in or denied the benefits of BUSD services, programs, or activities, or were otherwise discriminated against by BUSD, as differentiated from SCOE services, programs, or activities. BUSD further contends that it is not the party responsible for the alleged discrimination by abuse because the teachers allegedly responsible were employees of SCOE, not BUSD.  BUSD also argues that even if the teachers were their employees, or if SCOE was found to be their independent contractor, the teachers were not acting within the scope of their employment.

The TAC alleges that Student Plaintiffs "either are not provided programs, services and activities that are provided to non-disabled students, or are provided programs, services and activities that are not equal to, and are inferior to, the services provided to students who are not physically disabled." TAC ¶ 85.  Student Plaintiffs further allege that they "were abused because of their disabilities which amounts to disability discrimination."  TAC ¶ 85.  Student Plaintiffs allege that BUSD is the school district with the ultimate responsibility of providing educational services to Student Plaintiffs as residents within the school district.  TAC ¶¶ 15, 16, 18.

///

///

By statute, the governing board of any school district is
authorized to contract with a county office of education to
provide special education services.  Cal. Educ. Code § 56195.1.
And under Cal. Gov. Code § 895.2, "[w]henever any public entities
enter into an agreement, they are jointly and severally liable
upon any liability which is imposed upon any one of the
entities." Ross v. Campbell Union School Dist., 70 Cal. App. 3d
113, 118 (1977).  The referred to programs, services and
activities that are provided to non-disabled students are
provided by BUSD while the programs provided to disabled students
that Student Plaintiffs are alleging as inferior are provided by
SCOE.  Therefore, it can be reasonably inferred that BUSD has
contracted with SCOE to provide these services and as such the
special education services essentially are provided by BUSD.[8]

///

///

///

_____

[8] Furthermore, the Legislature intended the ADA to provide a
"broad scope of protection."  42 U.S.C. § 12101.  This Court
believes that if the Legislature intended to limit the scope in
this manner, it would have done so explicitly.  Instead, the ADA
implementing regulations provide that "[a] public entity, in
providing any aid, benefit, or service, may not, directly _or
through contractual, licensing, or other arrangements_, on the
basis of disability ... [a]fford a qualified individual with a
disability an opportunity to participate in or benefit from the
aid, benefit, or services that is not equal to that afforded
others ...." 28 C.F.R. § 35.130.  The Court is not convinced that
a per se rule immunizing local school districts for acts
occurring on school grounds is consistent with the purpose of the
ADA as to do so would encourage school districts to contract away
their obligations to provide special education and therefore
escape all liability.  Furthermore, action on the part of all
Defendants is necessary to provide the complete relief sought, as
it will require both SCOE and BUSD to revisit their special
education local plan in order to provide equal educational
programs for disabled students.

Student Plaintiffs' exclusions from BUSD's educational programs at Benicia High School were based on their disabilities as those individuals with disabilities were provided educational programs by SCOE.  Thus, BUSD's placement of Student Plaintiffs in the SCOE classroom rather than in a regular classroom was solely because of their disabilities, since if a student were not handicapped, BUSD provided the programs.  Accordingly, Student Plaintiffs have adequately alleged that they were denied the benefits of BUSD's educational programs and that such denial was based on their disabilities, thereby satisfying the third element of ADA and Rehabilitation Act Claims.

BUSD insists it cannot be held vicariously liable for the actions of SCOE and SCOE's employees, the special education teachers who allegedly abused Student Plaintiffs.  According to BUSD even if SCOE was found to be an independent contractor of BUSD, the teachers' actions were not within the scope of their duties and consequently no vicarious liability inures to BUSD. It is not necessary for the Court to determine at this time whether child abuse by a teacher in a classroom is within their scope of employment as Student Plaintiffs have alleged that much of the abuse occurred in open areas of the BUSD campus and that BUSD employees, specifically Principal Holland and Vice-Principal Severson, failed to report such abuse as mandated by California Penal Code § 11166.  TAC ¶¶ 24, 78.  All school district employees that work in the public school are mandated reporters. Cal. Penal Code § 11165.7.  Therefore, mandatory reporting is within the scope of employment of BUSD employees working at Benicia High School.

1  Student Plaintiffs allege that "Holland and Severson knew or

2  should have known of the abuse and failed to report it or end

3  it."  TAC ¶ 24.  Accepting this allegation as true and in the

4  light most favorable to the nonmoving party, Student Plaintiffs

5  have adequately alleged that the acts or omissions of BUSD's

6  employees led to Student Plaintiffs being denied participation in

7  educational programs equal to those provided by BUSD.

8       With respect to the fourth element, Student Plaintiffs have

9  alleged that BUSD is "a local government entit[y]" and a

10  "recipient[] of federal financial assistance."  TAC ¶ 18.

11       Therefore, Student Plaintiffs have adequately stated a cause

12  of action under the ADA and Rehabilitation Act.  Accordingly,

13  BUSD's motion to dismiss Student Plaintiffs' First and Second

14  Claims is DENIED.

15       Similarly, since if a plaintiff states a cause of action

16  under the ADA, the plaintiff has stated a State law cause of

17  action under the Unruh Act, BUSD's motion to dismiss Student

18  Plaintiffs' Third Claim is also DENIED.

19       As to Student Plaintiffs' Fourth Claim under California

20  Government Code § 11135, Student Plaintiffs have alleged that

21  BUSD is a "recipient of financial assistance from the State of

22  California."  Since if a plaintiff states a cause of action under

23  the Rehabilitation Act, the plaintiff has stated a State law

24  cause of action under Gov. Code § 11135, with the addition of an

25  allegation of State financial assistance, BUSD's motion to

26  dismiss Student Plaintiffs' Fourth Claim is DENIED.

27  ///

28  ///

17

## 2.   As to Parent Plaintiffs GM, LW, and BW.

DK's conservator, GM, and MW's guardians ad litem, LW and
BW, (collectively "Parent Plaintiffs") assert claims on their own
behalf under the ADA.  BUSD argues Parent Plaintiffs lack
standing to bring these claims because they do not allege (1) a
personal qualifying disability, and (2) denial of or access to
any BUSD programs, services, or activities.  Plaintiffs argue
that controlling precedent in <u>Blanchard v. Morton</u>, 509 F.3d 934,
936-937 (9th Cir. 2007), provides that parents may in fact
recover for ADA and Rehabilitation Act violations.

The ADA specifically affords "any person alleging
discrimination on the basis of disability" the right to relief.
42 U.S.C. § 12133.  The ADA also makes it unlawful to "exclude or
otherwise deny equal goods, services, facilities, privileges,
advantages, accommodations, or other opportunities to an
individual ... because of the known disability of an individual
with whom the individual ... is known to have a relationship or
association."  42 U.S.C. § 12182(b)(1)(E); 28 C.F.R. § 35.130(g).

Therefore, as individuals with a relationship to a person
with a known disability, Parent Plaintiffs could have a cause of
action under the ADA.  However, Parent Plaintiffs BW and LW have
not alleged that they were denied access to or participation in
any programs or activities.  Therefore, Parent Plaintiffs BW and
LW have not sufficiently stated a cause of action under the ADA
or Rehabilitation Act.

///

///

Parent Plaintiff GM alleges that after notifying the school that she was represented by an attorney, she was informed that she would not be allowed to visit her son DK's classroom without providing notice and receiving permission from her SCOE supervisor.  TAC ¶ 51.  GM further alleges that she knows of no other parents who are prohibited from such and no policy of such. TAC ¶ 51.  It cannot be reasonably inferred, however, that GM's denial of access to DK's classroom was by reason of his disability but rather it was due to GM's being represented by counsel that caused the change in policy with regards to GM. Therefore, Parent Plaintiff GM also has not adequately stated a cause of action under the ADA or the Rehabilitation Act.

Accordingly, BUSD Defendants' Motion to Dismiss the First, Second, Third, and Fourth Claims with respect to Parent Plaintiffs is GRANTED.

**C.   Government Tort Claims Act**

BUSD and SCOE argue that to the extent the state law claims in the TAC are different from the allegations in the Government Claims filed by Plaintiffs, Plaintiffs' Third and Ninth Claims must be dismissed because such claims are barred for failure to comply with the Government Tort Claims Act.[9]  (BUSD's P. & A. 9-11; SCOE's Joinder 1-2.)

---

[9] BUSD initially included Plaintiffs' Fourth Cause of Action for violations of Government Code § 11135 in its motion to dismiss. However, to the extent that Plaintiffs have limited such claim to injunctive relief, BUSD concedes that this claim cannot be dismissed for failure to comply with the Government Tort Claims Act. (BUSD's P. & A. 7 fn. 7.)

BUSD Defendants also argue that neither Government Claim "alleged any facts relative to BUSD or any BUSD employee that would support the state law causes of action alleged here." (BUSD's P. & A. 10.)  BUSD and SCOE further contend that to the extent Parent Plaintiffs did not file their own Government Claims prior to filing the present suit, Parent Plaintiffs' Third and Ninth Claims must be dismissed.  (BUSD's P. & A. 9-11; SCOE's Joinder 1-2.)  BUSD Defendants, SCOE Defendants, and Defendant Haddock join with respect to Parent Plaintiffs' Ninth Claims.  (BUSD's P. & A. 9-11; SCOE's Joinder 1-2; Haddock's Joinder 1-2.)

Plaintiffs urge that they satisfy the Government Tort Claims Act because they "have based their complaints on the same set of facts alleged in the claim notice and the facts alleged in the claims notice were sufficient to alert the BUSD Defendants of the claims such that they could investigate." (Pls.' Opp. 8.) Plaintiffs argue that Defendants are seeking to place a higher standard on the Government Tort Claims Act than statutorily required. (Pls.' Opp. 8.)

As an initial matter, Plaintiffs admit that Parent Plaintiffs LW and BW did not file their own individual claims pursuant to the Government Tort Claims Act.  Furthermore, Parent Plaintiffs LW and BW cannot cure this insufficiency as claims shall be presented not later than one year after the accrual of the cause of action. Cal. Gov. Code § 911.2.  Therefore, Parent Plaintiffs LW and BW's Third and Ninth Claims are dismissed without leave to amend.  However, as to Parent Plaintiff GM, DK's Government Claim clearly lists that such claim was being brought by GM "on behalf of herself." (RJN Ex. A 1.)

1   Therefore, Defendants' contention that it did not have notice

2   that GM would bring suit against BUSD in her own name is without

3   merit.  However, Parent Plaintiff GM's Third Claim has already

4   been dismissed above, so only the Ninth Claim remains.

5       Before bringing a suit against a public entity, the

6   Government Tort Claims Act requires the timely presentation of a

7   written claim and a rejection in whole or part.  Cal. Gov. Code

8   § 905; Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470,

9   1477 (9th Cir. 1995) (citing Snipes v. City of Bakersfield, 193

10  Cal. Rptr. 760, 762 (Cal. App. 5th Dist. 1983)).  A plaintiff

11  must allege facts demonstrating either compliance with the

12  Government Tort Claims Act requirement or an excuse for

13  noncompliance as an essential element of the cause of action.

14  State of California v. Superior Court (Bodde), 32 Cal. 4th 1234,

15  1243-44 (Cal. 2004).  Failure to allege compliance or an excuse

16  for noncompliance constitutes a failure to state a cause of

17  action and results in a dismissal of such claims.  See Id.

18      "The purpose of these statutes is 'to provide the public

19  entity sufficient information to enable it to adequately

20  investigate claims and to settle them, if appropriate, without

21  the expense of litigation.' [Citation.] Consequently, a claim

22  need not contain the detail and specificity required of a

23  pleading, but need only 'fairly describe what [the] entity is

24  alleged to have done.' [Citations.] As the purpose of the claim

25  is to give the government entity notice sufficient for it to

26  investigate and evaluate the claim, not to eliminate meritorious

27  actions [citation], the claims statute 'should not be applied to

28  snare the unwary where its purpose has been satisfied'

21

1  [citation]." <u>Stockett v. Association of Cal. Water Agencies Joint</u>
2  <u>Powers Ins. Authority</u>, 34 Cal. 4th 441, 446 (2004).

3      In the instant case, Plaintiffs allege that they "timely
4  filed Tort Claims Notices under Government Code section 910 et
5  seq." and that "Defendants rejected the Tort Claims Notices for
6  all Plaintiffs."  (Pls.' TAC ¶ 7.) Generally at this stage, all
7  allegations of material fact must be accepted as true and
8  construed in the light most favorable to the Plaintiffs.  If
9  true, Plaintiffs have satisfied the Government Tort Claims Act
10 requirement and have alleged this fact in their TAC. However, the
11 allegations of the complaint are not accepted as true if they
12 contradict or are inconsistent with facts judicially noticed by
13 the court.  Therefore, the Court must determine whether, as
14 Defendants contend, the judicially noticed Government Claims
15 contradict or are inconsistent with Plaintiffs' allegation that
16 they have complied with the Government Tort Claims Act. "[I]n
17 considering whether a claim substantially complies with the
18 Government Tort Claims Act, the claim should be viewed in its
19 entirety and a determination made as to whether the claim is
20 susceptible to an interpretation that reasonably enables the
21 public entity to make an adequate investigation." <u>Connelly v.</u>
22 <u>County of Fresno</u>, 146 Cal. App. 4th 29, 40 (2006).
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

BUSD argues that the Government Claims failed to fairly describe what BUSD, as differentiated from SCOE, was alleged to have done and therefore, fails to give BUSD notice of the state law claim of violations of the Unruh Act.  BUSD contends that Plaintiffs' Government Claims failed to mention any programs, activities or services of BUSD from which Plaintiffs were denied access or benefits because of their disabilities.

Plaintiffs DK and GM's Government Claim ("DK's Claim") alleges that "[a]ll claims occurred within the jurisdiction of the ... Benicia Unified School District," "the District violated Claimant's civil rights under California and federal law during the 2006-2007 school year including and continuing thereafter" and "[c]laimant is a student with disabilities in the District who is eligible for education pursuant to the Individuals with Disabilities Act."  (RJN, Ex. A ¶¶ 2a, 2c, 2d.)  DK's Claim also alleges that "[c]laimant's teacher...and class room aide... physically abused Claimant by covering his hands in glue, and repeatedly forcing him to walk on his injured foot,... improperly restrained Claimant against his will when they tied him to his wheelchair and placed him upside down with his injured foot in the air...[and] subjected Claimant to unhealthy, sub-human, and humiliating conditions...when they permitted him to sit in his own feces and allowed him to place his hands in his own feces."  (RJN, Ex. A ¶¶ 2e, 2f, 2g.)  The Court believes that DK's Claim put BUSD on notice that DK was a student with a disability entitled to special education services, that DK was claiming abuse occurring on BUSD's Benicia High School campus, and that such alleged abuse was a result of DK's disability.

While DK's Claim does not specifically state that such abuse denied DK the benefits of the special education program, DK's allegations are certainly susceptible to such an interpretation due to his "severe emotional distress...aggressive behaviors at school...and crying uncontrollably at school." (RJN, Ex. A ¶ 3a.)  Furthermore, there is no allegation in DK's Claim that limits the abuse to only occurrences in the SCOE classroom.  As such, DK's Claim stated adequate information to advise BUSD that DK suffered abuse due to his disability while on the BUSD Benicia High School campus and to give BUSD adequate information to investigate such claims.  That was all that was required to substantially comply with the statutes and thus BUSD was sufficiently apprised of the Unruh Act claim.  The same reasoning is equally applicable to SCOE who joins in this part of the motion to dismiss.

Student Plaintiff MW's Government Claim ("MW's Claim") alleges that "[a]ll claims occurred within Solano County and the Benicia Unified School District," "the Benicia Unified School District...fail[ed] to implement Claimant's Individualized Education Plan," and "[c]laimant is a student with disabilities in the District who is eligible for special education pursuant to the Individuals with Disabilities Education Act." (RJN, Ex. B ¶¶ 2a, 2b, 2d.)  MW's Claim also alleges that BUSD's failures "resulted in Claimant's teacher...and class room aide... physically and mentally abusing Claimant" and "[a]s a result of the abuse, Claimant has suffered from various maladies, including psychosis, and other physical and mental maladies." (RJN, Ex. B ¶¶ 2b, 3e.)

MW's Claim further alleges that "[t]hese incidents occurred...in *and around* a classroom located on the Benicia High School campus." (RJN, Ex. B ¶ 2c, emphasis added.)  The Court believes that MW's Claim put BUSD and SCOE on notice that MW was a student with a disability entitled to special education services, that MW was claiming abuse occurring on BUSD's Benicia High School campus, and that such alleged abuse was a result of MW's disability.  Like DK's Claim, MW's Claim does not specifically state that such abuse denied MW the benefits of the special education program; however, MW's allegation of resulting psychosis is certainly susceptible to such an interpretation.  As such, MW's Claim stated adequate information to advise BUSD and SCOE that DK suffered abuse due to his disability while on the BUSD Benicia High School campus and to give BUSD and SCOE adequate information to investigate such claims.  That was all that was required to substantially comply with the statutes.

        As to the negligent supervision claim, DK's Claim alleges that "[a]s a result of the SCOE's and District's failure to supervise their employees and the outrageous conduct of their employees...Claimant has suffered severe emotional distress...." (RJN, Ex. A ¶ 3a.)  MW's Claim alleges that "SCOE and...District ...fail[ed] to properly train their employees in state and federal special education law, and fail[ed] to supervise their employees, which resulted in...physical[] and mental[] abus[e to] Claimant."  (RJN, Ex. B ¶ 2b.)  The difference in DK's Claim and MW's Claim alleging that BUSD and SCOE negligently supervised their employees and the TAC wherein Plaintiffs alleged that BUSD and SCOE negligently supervised Student Plaintiffs is not fatal.

"Only where there has been a 'complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim,' have courts generally found the complaint barred." <u>Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.</u>, 34 Cal. 4th 441 (2004).  Plaintiffs are not attempting to premise liability on an entirely different factual basis than what was set forth in their respective claims. Rather, the cause of action of negligent supervision is predicated on the same fundamental facts - whether or not BUSD and/or SCOE supervised *the events*, between the students and the employees, occurring in the SCOE classroom and on the BUSD campus during the relevant time period.

BUSD Defendants also argue that the Ninth Claim must be dismissed as to the Individual Defendants for failure "to file a valid and timely claim with BUSD prior to suing the Individual Defendants." (BUSD Def.'s Reply, fn 4.) Cal. Gov. Code § 950.2 states that in order to perfect a claim against a public employee for acts or omissions that occurred within the public employee's scope of employment, a plaintiff must file a claim with the public entity employer. Therefore, BUSD Defendants' argument is without merit as it is undisputed that Plaintiffs filed claims with BUSD prior to suing the Individual Defendants.  Cal. Gov. Code § 910 requires the claimant to name the public employee causing the injury, damage, or loss, if known.

///

///

///

While the claims presented may not have been the model of clarity as no BUSD employees are particularly identified, the claims were sufficient to put BUSD on notice that itself and its employees, those who were responsible for on-campus supervision, were alleged to have negligently supervised the campus and to investigate such claims.

Accordingly, Defendants' argument to dismiss Plaintiffs' Third and Ninth Claims for failure to satisfy the Government Tort Claims Act must be rejected.

**D.    Negligent Supervision**

BUSD Defendants argue that Plaintiffs failed to allege any facts that BUSD or any of the BUSD Individual Defendants were actually negligent in their supervision, and thus have failed to state a cause of action against any BUSD Defendants for Negligent Supervision.  According to BUSD Defendants, the gravamen of the allegations against them are that because of their official duties and responsibilities, they were ultimately in charge of BUSD.  BUSD Defendants point out that many of the Individual Defendants were not on the BUSD Board at the time of the alleged abuse and that Plaintiffs failed to allege that any of the BUSD Individual Defendants were ever on the BUSD campus during the times of alleged abuse.  BUSD Defendants argue that this is fatal to Plaintiffs Ninth Claim.  Plaintiffs urge that under California law a school district has a general duty to supervise.

///

///

1   Plaintiffs further argue that Student Plaintiffs' disabilities

2   subjected them to "unique vulnerability" and thus, abuse to them

3   was a foreseeable consequence of BUSD Defendants' failure to

4   adequately supervise.

5        In California, all government tort liability is dependant on

6   the existence of an authorizing statute.  Cal. Gov. Code § 815;

7   Lopez v. S. Cal. Rapid Transit Dist., 40 Cal. 3d 780, 785 n.2

8   (1985); Morris v. State of California, 89 Cal. App. 3d 962, 964

9   (Cal. App. 2d Dist. 1979).  To state a cause of action, every

10  fact essential to the existence of statutory liability must be

11  pleaded with particularity, including the existence of a

12  statutory duty.  Susman v. Los Angeles, 269 Cal. App. 2d 803, 808

13  (Cal. App. 2d Dist. 1969); Lopez, 40 Cal. 3d 780, 795.  "The

14  facts showing the existence of the claimed duty must be alleged."

15  Since the duty of a governmental agency can only be created by

16  statute, the statute claimed to establish the duty must be

17  identified.  Searcy v. Hemet Unified Sch. Dist., 177 Cal. App. 3d

18  792, 802 (Cal. App. 4th Dist. 1986).

19       In the instant case, Plaintiffs reference several statutes

20  in order to establish such a duty.  First, Plaintiffs state that

21  Cal. Educ. Code § 56000 et. seq. establishes that Defendants had

22  a duty to provide education pursuant thereto.  (TAC ¶ 138.)

23  However, nothing in this statute provides that a school district

24  has a duty to supervise.

25  ///

26  ///

27  ///

28  ///

1   Plaintiffs further point to Cal. Gov. Code § 815.6 and California
2   Penal Code § 11166 to assert that Defendants are mandatory
3   reporters of knowledge of child abuse.  Cal. Gov. Code § 815.6
4   states that "[w]here a public entity is under a mandatory
5   duty..., the public entity is liable for an injury of that kind
6   proximately caused by its failure to discharge the duty...."
7   However, this statute still does not establish the duty to
8   supervise, it only states that if there is such a mandatory duty,
9   the public entity is liable for injuries proximately caused by a
10  breach of that duty. Plaintiffs also assert liability under the
11  Hughes Bill, 5 C.C.R. § 3052 which establishes a duty to provide
12  positive behavior intervention plans to special needs students.
13  Again, this statute does not establish a duty to supervise.

14      Therefore, Plaintiffs fail to identify a statute creating
15  liability in their TAC as required.  <u>See</u> <u>Searcy</u>, <u>supra</u>.
16  Accordingly, Student Plaintiffs' Ninth Claim against BUSD
17  Defendants must be dismissed with leave to amend.

18      Furthermore, Parent Plaintiffs concede that they are neither
19  direct victims nor bystanders and thus cannot maintain a cause of
20  action for negligent supervision.  Therefore, Parent Plaintiffs'
21  Ninth Claim against BUSD Defendants, SCOE Defendants, and
22  Defendant Haddock are dismissed without leave to amend.

23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1    BUSD Defendants further argue that the Ninth Claim against

2    BUSD Individual Defendants must be dismissed as duplicative of

3    the Ninth Claim against BUSD.  BUSD Defendants assert that to the

4    extent that BUSD Individual Defendants are only sued in their

5    official capacities and not their personal capacities, any

6    finding of liability on their part will be imputed to BUSD and

7    thus the claims against BUSD Individual Defendants are

8    duplicative of the claim against BUSD.  Plaintiffs argue that

9    because BUSD Individual Defendants are only named in their

10   official capacities and not their personal capacities, there is a

11   need to keep these Individual Defendants in the litigation for

12   discovery purposes.  The Court is not persuaded by Plaintiffs'

13   argument.  Therefore, Plaintiffs' Ninth Claim against BUSD

14   Individual Defendants is dismissed without leave to amend.

15

16                                **CONCLUSION**

17

18   Based on the foregoing, BUSD's Motion to Dismiss (Docket

19   No. 58) Student Plaintiffs' First, Second, Third and Fourth

20   Claims is DENIED.  However, BUSD Defendants' Motion to Dismiss

21   Parent Plaintiffs' First, Second, Third, Fourth and Ninth Claims

22   is GRANTED.  SCOE's Motion to Dismiss LW's and BW's Third Claim

23   is granted for failure to comply with the California Government

24   Tort Claims Act.  Parent Plaintiffs' Ninth Claim is dismissed in

25   its entirety against all joined Defendants.  Finally, Student

26   Plaintiffs' Ninth Claim is dismissed as to BUSD Defendants with

27   leave to amend.

28   ///

1    Plaintiffs may file a Fourth Amended Complaint, should they

2  choose to do so, not later than twenty (20) calendar days

3  following the date of this Memorandum and Order is filed

4  electronically.   In the event Plaintiffs choose to file a Fourth

5  Amended Complaint, a Joint Status Report shall be due not later

6  than thirty (30) calendar days after the filing of any such

7  amended complaint. If no Fourth Amended Complaint is filed, the

8  parties are directed to file a Joint Status Report not later than

9  thirty (30) calendar days after this Order is filed

10 electronically.

11    IT IS SO ORDERED.

12
 Dated: October 2, 2009

13

14
                                    _____
15                                   MORRISON C. ENGLAND, JR.
                                     UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28